UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JANET KIM HURLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CV-166-HAI |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On April 5, 2016, Plaintiff Janet Kim Hurley filed a Title II application for disability insurance benefits. *See* D.E. 5-4 at 357.[1] Hurley dates the beginning of her disability period to April 1, 2016. *Id.*

Hurley summarizes her hearing testimony concerning her medical problems. D.E. 17-1 at 2.[2] Hurley claims she is disabled due to a combination of physical conditions. *Id.* Hurley's medical conditions include:

> difficulty with her hearing; suffers from rheumatoid arthritis and diabetes; has trigger finger issues on her right hand and on the first fourth finer and her left hand on the 3rd and 4th fingers; suffers from Addison's disease; chronic kidney disease, stage 2; diabetic retinopathy; and has had trouble with her lower back. She is still treating with Dr. Chaney in regard to these problems. She also suffers from tachycardia as well as fatigue and flare ups which cause her to be very weak. . . . Her diabetic neuropathy causes her problems with her hands and feet. She testified she takes Gabapentin for these problems, but that she still has shooting and burning pain in her feet and toes and that it causes her problems to use both of her hands. Further, in regard to her vision problems, her right eye is totally blurred and she really can't see anything. She has dizziness, feels weak at times. She testified she has carpal tunnel syndrome as well as arthritis in her hands.

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.
[2] References to the record other than the administrative record are to the page numbers generated by ECF.

*Id.* at 2-3. The Kentucky State Agency denied Hurley's claims initially on July 18, 2016, and upon reconsideration on August 17, 2016. D.E. 5-4 at 357. Then, on April 17, 2018, upon Hurley's request, Administrative Law Judge ("ALJ") Davida Isaacs conducted an administrative hearing. *Id*. The ALJ heard testimony from Hurley and impartial vocational expert ("VE") Martha R. Goss. *Id*. She was found to not be disabled during the relevant period, from April 1, 2016, to August 9, 2018, the date of the decision. *Id.* at 366.

Hurley appealed the decision. On December 2, 2019, the Appeals Council vacated the hearing decision and remanded the matter after concluding that (1) "[t]he hearing decision [did] not contain an evaluation of a treating source opinion from George R. Chaney, M.D. (Exhibit 11f)," (2) the decision failed to "consider the claimant's degenerative disc disease at step 2 of the sequential evaluation," and (3) the ALJ erred by evaluating Hurley's past relevant work "as generally performed in the national economy" when it should have been evaluated "as the claimant actually performed it." D.E. 5-4 at 374-75. On remand, the ALJ was directed to give further consideration to Hurley's maximum residual functioning capacity by evaluating the treating and non-treating source opinions pursuant to 20 C.F.R. § 404.1527, give further consideration to whether Hurley has past relevant work and, if so, can perform it, and, if warranted by the expanded record, obtain evidence from the vocational expert to clarify the effect of the assessed limitations on Hurley's occupational base. *Id.* at 375.

On July 7, 2020, the ALJ held a second administrative hearing.[3] D.E. 5-3 at 175. The ALJ heard testimony from Hurley and impartial VE Laura Lykins. *Id*. The ALJ found Hurley to not be disabled during the relevant period, from April 1, 2016 to September 29, 2020, the date of

---

[3] The transcript of the July 7 hearing indicates that another hearing was held "about a week and a half" prior. D.E. 5-3 at 241. Due to a technical issue, the audio from that hearing was not recorded. *Id.*

the subsequent decision. Hurley appealed the ALJ's decision again, but this time the Appeals Council denied her claim. *Id.* at 16.

Hurley brings this action under 42 U.S.C. § 405(g) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits. Both parties consented to the referral of this matter to a magistrate judge. D.E. 8, 9. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 10. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 17) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 19).

### I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[4] The ALJ followed these procedures in this case. *See* D.E. 5-3 at 177-85.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Hurley had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date. D.E. 5-3 at 177.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The

---

[4] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

3

ALJ found that Hurley experiences the severe impairments of degenerative disc disease of the lumbar spine; diabetes mellitus with mild nonproliferative diabetic retinopathy; stage 2 kidney disease; bursitis in the right shoulder; cubital tunnel/carpal tunnel; gastroparesis/ulcerative colitis; trigger fingers, bilaterally; osteoarthritis in hands; hearing loss; tachycardia; and obesity. D.E. 5-3 at 177.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Hurley failed to meet this standard. D.E. 5-3 at 179.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. The ALJ found Hurley had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders/scaffolds and can reach overhead with her dominant (right) arm no more than occasionally; can reach bilaterally in front/handle/finger no more than frequently; should avoid unusually hazardous workplaces, such as those with large moving machinery and unprotected heights; cannot drive commercially; and is limited to no more than moderate noise environments.

*Id.* at 180.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of his residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). Composite jobs "have significant elements of two or more occupations, and, as such, have no counterpart in the DOT." S.S.R. 82-61, 1982 WL 31387 (Jan. 1, 1982). The Social Security Administration's Program Operations Manual System ("POMS") indicates that, if a claimant's past relevant work qualifies as a composite job, the ALJ does not consider work "as generally performed in the national economy," and instead compares "the

4

claimant's RFC to a composite job as the claimant performed it." *Burgess v. Soc. Sec. Admin.*, No. 3:15-CV-00701, 2016 WL 5800467, at *4 (M.D. Tenn. Sept. 30, 2016) (citing POMS DI 25005.020B, 2011 WL 4753471). The ALJ may "find the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id.* Here, the ALJ accepted the VE's testimony that the Hurley's past work is a composite job and she "cannot return to this past relevant work as actually performed, due to [her] driving exclusion." *Id.* at 184.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). If the claimant has solely nonexertional limitations, the Medical-Vocational Guidelines provide a framework for decision-making, and "do not direct conclusions of disabled or not disabled." S.S.R. 85-15, 1985 WL 56857 (Jan. 1, 1985). The ALJ found Hurley was not disabled at this step. D.E. 5-3 at 184-85. The ALJ found that Hurley had "acquired work skills from past relevant work." *Id.* at 184. The ALJ accepted the VE's testimony that Hurley could find work as, for example, office clerk (adult education) and secretary (education). *Id.* at 185. The ALJ concluded "although claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferrable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.15." *Id.*

Accordingly, on September 29, 2020, the ALJ issued an unfavorable decision, finding that Hurley was not disabled, and was therefore ineligible for disability insurance benefits. The Appeals Council declined to review the ALJ's decision on August 27, 2021. *Id*. at 16.

Hurley argues that the ALJ did not follow the Appeals Council's remand order. D.E. 17-1 at 6.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole.  *Id.*  (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[5] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

---

[5] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

### III. The ALJ's Assessment of Hurley's Treating Physician

Section 416.927 of the regulatory code describes how the Commission is to evaluate medical opinion evidence.[6] "Generally," treating sources are given "more weight" than non-treating sources. 20 C.F.R. § 416.927(c)(2). The regulation informs claimants, "If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id*. However, there may be "good reasons" for declining to ascribe "controlling weight." *Id*. Such reasons include how well the opinion is supported by relevant evidence (*id*. § 416.927(c)(3)) and how consistent the opinion is with "the record as a whole" (*id*. § 416.927(c)(4)).

Hurley argues that the ALJ erred by "again discredit[ing] Dr. Chaney's opinions without giving proper weight to the fact that Dr. Chaney is her treating physician." D.E. 17-1 at 8. Specifically, Hurley argues that the ALJ failed to address each of her conditions Dr. Chaney testified about during his deposition and how they would affect her ability to do work. *Id.* at 9.

Under the regulations as they existed in 2016, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record,' then it will be accorded controlling weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 004)).

---

[6] These regulations apply to Hurley's claim because it was filed before March 27, 2017. The newer regulations, codified at 20 C.F.R. § 416.920c, no longer incorporate a "controlling weight" standard. *See* 20 C.F.R. § 416.920c(a).

8

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization. *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (*citing Wilson*, 378 F.3d at 544). The ALJ must provide "good reasons" for discounting a treating physician's opinion, and the reasons must be "sufficiently specific" so any reviewers will know the ALJ's reasoning for ascribing a particular weight to the opinion. *Rogers*, 486 F.3d at 242. However, "[t]his does not require an exhaustive step-by-step analysis, but merely good reasons for the ALJ's weighing of the opinion." *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) (quoting *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017)) (internal quotation marks omitted). Further, "[r]emand is not necessary . . . if the ALJ's failure to provide good reasons is a 'harmless *de minimis* procedural violation.'" *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 438 (6th Cir. 2018) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has identified three situations in which this might occur:

> (1) where a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, (2) where the Commissioner adopted the opinion of the treating source or makes findings consistent with the opinion, and (3) where the Commissioner has met the goal of the procedural safeguard of reasons.

*Id.* at 438 (quoting *Wilson*, 378 F.3d at 547) (internal quotation marks omitted). As to the third circumstance, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the

9

claimant's ailments." *Id.* (quoting *Friend v. Comm'r of Soc. Sec.*, 375 App'x 543, 551 (6th Cir. 2010)).

To clarify, the Appeals Council did not find that the ALJ's findings regarding Dr. Chaney were all in error. Rather, the Appeals Council found that the ALJ's original decision did not contain an evaluation of Exhibit 11F (D.E. 5-14 at 2240), which is Dr. Chaney's deposition testimony. D.E. 5-4 at 374-75. Contrary to Hurley's assertions, the ALJ did address the conditions mentioned by Dr. Chaney in his deposition testimony (Exhibit 11F) and elsewhere in the second decision. As to her consideration of the medical opinions of Dr. Chaney, the ALJ explained:

> As for the opinion evidence, Dr. George Chaney has opined numerous times that the claimant has been disabled since March 2016. Exhibit 11F; Exhibit 24F; Exhibit 25F; Exhibit 27F; Exhibit 28F; Exhibit 35F; Exhibit 36F. I give *all* of these opinions little weight to the extent that they are ostensibly offered to be dispositive of the ultimate issue of disability, an issue reserved exclusively to the Commissioner. Moreover, Dr. Chaney's several letters and/or mental source statements are extremely limiting and are not compatible with a claimant who lives alone, much less Dr. Chaney's own treatment records of the claimant. He paints with a wide brush and makes conclusory statements which are inconsistent with his own treatment records. Further, he opined that the claimant had medical conditions that prevented her from doing any type of gainful employment. Dr. Chaney refers in one opinion to the claimant's impairments as being "poorly controlled" which is inconsistent with the stability of the claimant's treatment. Exhibit 25F. Dr. Chaney attests that the patient's peripheral neuropathy results in "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait or station." Exhibit 27F. However, the medical records indicate otherwise. Dr. Chaney's June 20, 2017, medical record notes a recommendation that the claimant "engage in regular aerobic physical activity such as brisk walking (at least 30 minutes per day, most days of the week)." Exhibit 23F, p. 19. The October 26, 2017, and November 20, 2017, medical records, note her sensation on her leg and feet as normal. Exhibit 20F, p. 2, 7. Both are inconsistent with the extreme standard alleged above by Dr. Chaney. Moreover, the claimant's treatment related to diabetes mellitus has not significantly changed in recent years. E.g., Exhibit 37F; Exhibit 48F.
>
> In his deposition (Ex. 11F), Dr. Chaney asserted that the claimant "just wasn't able to do her job". But he does not tie any of her limitations to her

>impairments. Her neuropathy appears to refer to "tingling and funny feelings" (11F/11); there is no evidence of numbness. He made completely unsupported statements such as an "inability to ambulate effectively" and "disorganization of motor function", and "moderate to severe pain." Exhibit 28F; Exhibit 27F. The claimant's gait is regularly noted as normal, with no evidence of motor weakness. *See, e.g.,* Exhibit 48F/5; Exhibit 30F/3. There are also references to headaches and severe shortmemory/concentration problems, none of which is demonstrated by the record. Exhibit 28F. In sum, I find that Dr. Chaney's medical source statements bear little relationship to the medical records, either the claimant's self-reports, objective signs and/or treatment. *Pointedly, at the hearing the claimant testified that Dr. Chaney "wanted me to quit" for several years before she did, which suggests that he incorrectly evaluated the significance of her symptoms, with no explanation for how this would benefit her health.* The fact that Dr. Chaney might have concluded that the claimant's life would have been easier/more pleasant had she quit her job is not equivalent to being unable to perform her job.

D.E. 5-3 at 182-83 (footnotes omitted). The ALJ also incorporated the analysis from her prior decision concluding that Dr. Chaney's other medical source statements were not persuasive. *Id.* at 182 n.1. The ALJ noted Dr. Chaney's warning for Hurley "to avoid work at heights while any symptoms of vertigo are present," but found that the impairment is not severe. *Id.* at 183 n.2. Still, the ALJ eliminated work in unusually high places "out of an abundance of caution." *Id.*

In addition and prior to the statements made above, the ALJ thoroughly weighed the medical evidence and treatment records against Hurley's claims and the medical assessments. D.E. 5-3 at 180-83. As to Addison's disease, the ALJ cited to Exhibit 11F and noted that, while Dr. Chaney "has indicated that the condition causes the claimant to require steroids when she gets sick, the record does not contain evidence of treatment specific to Addison's disease." D.E. 5-3 at 178. Thus, the ALJ concluded that "the condition does not result in any severe impairment." *Id.*

As to diabetes and diabetic retinopathy, the ALJ discussed Hurley's medical history, including citations to Dr. Chaney's medical notes and opinions, and concluded that both conditions had been "stable" or "without complication" in recent years and that Hurley's

11

medication has not changed in many years. *Id.* at 181. The ALJ further noted that "in May 2020, [Hurley] denied hypoglycemia or sleepiness and her diabetic symptoms were noted to be mild in severity." *Id.*

The ALJ also addressed Hurley's trigger fingers, carpal tunnel syndrome, and cubital tunnel syndrome. The ALJ highlighted that the medical records indicate the follow-up for the right first and fourth trigger finger release "demonstrated no pain or locking of fingers and [Hurley] was released to full activities." *Id.* at 181. The ALJ directly addressed Dr. Chaney's deposition testimony that Hurley has carpal tunnel syndrome in both wrists and cubital tunnel syndrome in both elbows, finding that "there is no additional evidence as to her elbows, and no indication that she has undergone surgery in this regard during the relevant period." *Id.* at 181-82. As to the degenerative arthritic changes and third finger trigger release of Hurley's left hand, the ALJ found that "[t]he record does not contain evidence of more recent, sustained treatment for these issues." *Id.* at 182.

As to her back pain, citing to Dr. Chaney's deposition testimony, the ALJ noted Hurley "was treated conservatively in 2017 for back pain but demonstrated normal range of motion and there is no evidence or more rigorous or sustained treatment for the condition." *Id.* at 181. The ALJ also discussed Hurley's right shoulder issues, noting 2016 imaging and an MRI "were negative" and "revealed mild bursitis and hypertrophy of the AC joint." *Id.* However, the ALJ stated that the record did not contain more recent imaging or "evidence of rigorous or sustained treatment for shoulder pain." *Id.*

Finally, as to Hurley's hearing loss, the ALJ noted Dr. Chaney's report of a mildly abnormal audiogram in October 2017 and advisement that Hurley should avoid noise. *Id.* The ALJ also noted that Hurley was able to communicate effectively at the hearings, does not have

hearings aids, and has not received "any sustained treatment for hearing issues." *Id.* Still, the ALJ found Hurley to be limited to no more than a moderate noise environment. *Id.*

Contrary to Hurley's assertions, the ALJ did address the conditions mentioned by Dr. Chaney in his deposition testimony. The ALJ provided "good reasons" for declining to ascribe controlling weight to Dr. Chaney's opinions by pointing out inconsistencies between those opinions and Hurley's claims and within Dr. Chaney's own assessment. These good reasons were "sufficiently specific" so that reviewers will know the ALJ's reasoning for ascribing little weight to Dr. Chaney's opinion. *Rogers*, 486 F.3d at 242. The ALJ was not required to recapitulate the prior inconsistencies highlighted in the pages prior to according the opinion of Dr. Chaney little weight. Nor was the ALJ required to undertake "an exhaustive step-by-step analysis." *Perry*, 734 F. App'x at 335.

In any event, any error in addressing the *Wilson* factors is *de minimis* because the goal of the procedural safeguard of reasons has been met. Hurley argues that this goal has not been met. D.E. 17-1 at 11. Specifically, Hurley states that "the medical records in this action clearly establish all of the conditions Dr. Chaney noted and support his restriction." *Id.* However, Hurley fails to cite to a single medical record in support of this assertion. Failure to provide specific page citations to the administrative record in support of arguments may alone constitute grounds for denial.[7] D.E. 6 at 3-4. Here, the ALJ at a minimum indirectly attacked the supportability and consistency of Dr. Chaney's opinions, including Exhibit 11F. Accordingly, the Court finds that the ALJ's findings are not unsupported by substantial evidence or contrary to law.

---

[7] The argument section of Hurley's motion for summary judgment, which spans about seven pages, includes only three specific citations to the record. D.E. 17-1 at 7, 9, 10. Pursuant to the Standing Scheduling Order, this alone may constitute grounds for denying Hurley's motion. D.E. 6 at 3-4. However, the Court will deny Hurley's motion for summary judgment on the merits.

13

### IV. The ALJ's Residual Functioning Capacity Finding

Next, Hurley indicates that the ALJ's second decision included degenerative disc disease as an additional severe impairment, "but did not specifically apply any type of restrictions that were added to the [RFC] from the original decision." D.E. 17-1 at 9. Hurley also notes that the ALJ's RFC finding in the second decision does not include that "she may be off task 5% of the work day [sic] and absent 1 day per quarter." *Id.* Despite Hurley's assertions to the contrary, the ALJ's RFC finding from the second hearing includes additional restrictions from the RFC in the vacated decision. The ALJ found that Hurley can never climb ladders or scaffolds, can bilaterally handle no more than frequently, cannot drive commercially, and is limited to no more than moderate noise environments, none of which were included in the RFC finding from the vacated hearing decision. D.E. 5-3 at 180, D.E. 5-4 at 362.

On the other hand, the ALJ's final decision does not include limitations for balancing, being off-task 5% of the workday, or being absent from work once per quarter. D.E. 5-3 at 180, D.E. 5-4 at 362. Hurley notes that the VE testified that a person could be off task up to 20% of the day based on her professional opinion and experience rather than the DOT. D.E. 17-1 at 10. However, the VE testified that this was because the Dictionary of Occupational Titles ("DOT") does not address the extent a person can be off task in skilled positions. D.E. 5-3 at 265. Further, the second hearing decision was also based upon evidence submitted after the vacated decision. D.E. 5-14 at 2632-2687, D.E. 5-15 at 2688-2914. Indeed, the ALJ directly addressed Hurley's mental health and ability to stay on task, which was not included in the vacated hearing decision:

> I find the claimant's mental health condition imposes no limitation in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself. Because the claimant's mental health symptoms cause no more than 'mild' limitation in any of

14

> the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)). While Dr. George Chaney indicated in February 2017 that the claimant had anxiety, she has not undergone any sustained treatment for mental health symptoms. Nor has she treated with any mental health specialists. Further, depression screenings have not resulted in any sustained mental health treatment. Exhibit 11F; Exhibit 37F.

D.E. 5-3 at 178-79. Hurley does not address this portion of the ALJ's opinion, let alone argue why it is insufficient. As the Commissioner points out, Hurley fails to cite to any authority that a new hearing decision must include all of the limitations from a prior vacated decision or that an off-task limitation was required. D.E. 19 at 6. Thus, the Court finds that the ALJ's RFC findings were not unsupported by substantial evidence.

### V. The ALJ's Assessment of Hurley's Past Relevant Work

Hurley also argues that the ALJ failed to follow the Appeals Council's instructions regarding evaluation of her past relevant work. The Appeals Council found that the record suggested Hurley's past relevant work is a composite job, which "do[es] not have a counterpart in the DOT and should not be evaluated 'as generally performed in the national economy.'" D.E. 5-4 at 374. Instead, composite jobs should be evaluated "as the claimant actually performed it, finding the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id.* at 374-75.

Hurley states that the ALJ "did not really even ask a new hypothetical" to the VE at the second hearing, the VE testified that she had a composite job, the ALJ discussed in detail the two jobs comprising the composite job, and the VE's testimony "dealt significantly with whether or not she could perform sedentary work." D.E. 17-1 at 9. Based on this, Hurley concludes that "the ALJ did not adequately address the directions of the Appeals Council." *Id.* at 10. Hurley does not cite to any legal authority that the ALJ's evaluation of her past relevant work was in

15

error. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

Further, as the ALJ specified in the final decision, the VE testified at the second hearing that Hurley's past work is a composite job and noted that it "cannot be evaluated as generally performed." D.E. 5-3 at 184. The ALJ's hypothetical included all of the limitations in the final RFC except for the restriction to no more than moderate noise environments. D.E. 5-3 at 258. However, the ALJ noted in the final decision that all of the jobs listed that Hurley could perform comply with that limitation. *Id.* at 185 n.3. The ALJ accepted the VE's testimony that Hurley cannot return to her past work ***as actually performed*** due to the driving exclusion. *Id.* Hurley fails to sufficiently articulate how the ALJ evaluated her past relevant work contrary to the direction of the Appeals Council. The Court finds that the ALJ's evaluation of Hurley's past relevant work as a composite job was not unsupported by substantial evidence or contrary to law.

### VI. The ALJ's Assessment of Hurley's Age, Education, and Past Work

Next, Hurley argues that the ALJ failed to address her age, education and past work at step five in determining whether she can return to her prior work or any other type of work. D.E. 17-1 at 12. Specifically, Hurley argues that the ALJ "should have considered the fact that she was closely approaching advanced age and that the limitations propounded by Dr. Chaney would have put her into performing, at best, sedentary work." *Id.* If so, Hurley concludes that the ALJ "should have addressed the Listing of the Grid Rules in regard to a person who is over 50 limited to sedentary work." *Id.*

As with several of her other arguments, Hurley again fails to cite to any legal authority, or the record, for her assertions. The ALJ specifically noted and considered Hurley's

16

date of birth, age, which qualifies as "closely approaching advanced age," her education, and her past relevant work, from which she acquired transferable skills. D.E. 5-3 at 184. The ALJ further noted that, because Hurley only has nonexertional limitations, the Medical-Vocational Guidelines provide a framework for decision-making, and "do not direct conclusions of disabled or not disabled." S.S.R. 85-15, 1985 WL 56857 (Jan. 1, 1985); D.E. 5-3 at 184-85. The ALJ accepted the VE's testimony that Hurley could find work as an office clerk (adult education) and secretary (education). *Id.* at 185. The ALJ concluded "although claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferrable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.15." *Id.*

Medical-Vocational Rule 202.15, which suggests a finding of "not disabled," applies to individuals, like Hurley, who are limited to light work and closely approaching advanced age and have a high school education, previous skilled or semiskilled work, and transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ explicitly considered Hurley's age, education, and transferable work skills. D.E. 5-3 at 184-85. Hurley's argument to the contrary is without merit. Further, to the extent Hurley asserts the ALJ should have accepted Dr. Chaney's opinion that she is limited to sedentary work, this argument is also without merit due to the Court's finding that the ALJ's assessment of Dr. Chaney's opinions was not in error. The ALJ found that Hurley is not disabled after considering the RFC and her age, education, and past work. This finding is not unsupported by substantial evidence.

### VII. The ALJ's Assessment of Hurley's Pain

Finally, Hurley argues that "the ALJ improperly rejected [her] credibility in regard to the extent of [t]he pain from her conditions." D.E. 17-1 at 12. Hurley states that the ALJ failed to

17

address the amount of pain she testified her severe medical impairments cause. *Id.* at 13. The ALJ considered Hurley's subjective complaints, but reasonably found them to not be fully credible or supported by the record. D.E. 5-3 at 180-81. Specifically, the ALJ found that Hurley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ noted that Hurley's statements are inconsistent with her ability to work in the past despite several of her severe impairments. *Id.* at 181. The ALJ further noted that Hurley "has been able to live alone during the relevant period" and her primary care provider "recommended that she engage in regular aerobic physical activity such as brisk walking." *Id.*

The ALJ directly addressed Hurley's complaints of back pain and noted that she was "treated conservatively in 2017 but demonstrated normal range of motion and there is no evidence of more rigorous or sustained treatment for the condition." *Id.* The ALJ further noted that, "[e]ven if subject to a diagnosis, this establishes no more than mild exertional and postural limitations." *Id.* As discussed above, the ALJ also addressed several of Hurley's other impairments and noted how her complaints of their intensity, persistence, and limiting effects were not supported by the medical evidence and record. *Id.* at 180-83. Finally, the ALJ specifically noted the inconsistencies in Hurley's own testimony:

> The claimant has indicated that she has problems sleeping but is able to care for her personal needs with a shower bar. She prepares food, washes laundry, dusts, sweeps, cleans windows, and washes dishes. She maintains that she spends a lot of time in the bathroom. However, she drives, shops with help lifting, visits with family and friends, and goes to church twice per week. She has estimated that she is able to stand for 8 to 10 minutes at a time and engage in activities for 5 minutes at a time. Exhibit 2E; Exhibit 4E; Exhibit 5E; Exhibit 10E; hearing testimony.

*Id.* at 180. Hurley fails to acknowledge the ALJ's assessment of her complaints of pain and other symptoms, let alone sufficiently argue why the findings were in error. The Court finds that the ALJ's assessment of Hurley's reported pain was not unsupported by substantial evidence.

In sum, Hurley has not pointed to any legal error on the part of the ALJ. She argues that medical opinions and her medical conditions should have been considered differently to comply with the Appeals Council's order, but the ALJ did follow the order's directives and her decision was not unsupported by substantial evidence.

## VIII.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)  Plaintiff's Motion for Summary Judgment (D.E. 17) is **DENIED**;

(2)  The Commissioner's Motion for Summary Judgment (D.E. 19) is **GRANTED**;

(3)  **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 29th day of November, 2022.

Signed By:
Hanly A. Ingram
United States Magistrate Judge